365 P.2d 1002 (1961)
In the Matter of the ESTATE of Hallie FOX, an incompetent person, J. Fred Green, Guardian.
L.W. WARREN, Plaintiff in Error,
v.
J. Fred GREEN, Defendant in Error.
No. 39067.
Supreme Court of Oklahoma.
October 31, 1961.
A. Carl Robinson, Julian B. Fite, Muskogee, for plaintiff in error.
Frye, Frye & Frye, Sallisaw, for defendant in error.
*1003 BERRY, Justice.
On November 15, 1952, proceedings (No. 3096) were instituted in the County Court of Sequoyah County, Oklahoma, to declare Mrs. Hallie Fox, hereafter referred to as "ward", an incompetent and for the appointment of a guardian of her person and estate. As a result of said proceeding ward was adjudged incompetent and the husband of one of ward's nieces was appointed guardian. He, however, declined to qualify and serve in said capacity. Thereafter, and on January 7, 1953, J. Fred Green, who was not related to ward, was appointed guardian and promptly qualified. Mr. Green is hereafter referred to as "guardian".
On March 24, 1955, a petition was filed in No. 3096 for removal of guardian as such. At said time ward's next of kin were eight sons and daughters of Mrs. Warren, a deceased sister of ward, and seven sons and daughters of Mrs. Proctor, also a deceased sister of ward. All nieces and nephews were named as petitioners and their names were signed to the petition by the lawyer who appeared as their counsel. The stated grounds for removal were that guardian was serving as attorney for the City of Sallisaw at the time of his appointment as guardian and thereafter continued to so serve; that under the provisions of 30 O.S. 1951 § 13, he was barred from serving in the capacity of guardian. By subsequent amendment to the petition, petitioners sought judgment surcharging guardian for fees that he had received for services rendered in said capacity. All of ward's next of kin, except one, were non-residents.
On June 22, 1955, a daughter of Mrs. Proctor, Annie Laurie Wiggert, moved to strike her name from the petition to remove guardian. She stated in her motion that she was satisfied with guardian's services and thought it was to ward's best interest that he continue to serve as guardian. It appears that the remaining heirs of Mrs. Proctor also moved to strike their names from the petition.
On July 5, 1955, the county court entered an order striking the names of the Proctor heirs from the petition and further ordered that guardian should not be removed. From this order the Warren heirs perfected an appeal to the District Court.
On February 27, 1956, the District Court entered judgment, which in effect reversed the appealed-from order of the County Court. The court found that on August 31, 1954, guardian resigned as attorney for the *1004 City of Sallisaw; that from date of appointment to date of resignation guardian was prohibited by Sec. 13, supra, from serving as Ward's guardian; that guardian should be and was surcharged for guardianship fees received during said period. No appeal was taken from the judgment.
On date the aforesaid judgment was rendered, guardian filed an application in No. 3096 to be appointed ward's guardian. He alleged that he had been acting as ward's guardian since January 7, 1953; that he was well acquainted with the financial affairs of the estate; that he was a licensed practicing attorney; that the Proctor heirs had consented to his being appointed guardian. On the same date a nomination was filed in No. 3096 by ward's next of kin in which they nominated The First National Bank & Trust Co. of Muskogee (hereafter referred to as "bank") as guardian and requested that said bank be appointed ward's guardian. Guardian's application was allowed and by formal order he was appointed guardian of ward's person and estate. He subsequently qualified as guardian. From said order ward's next of kin perfected an appeal to the District Court. The appeal was docketed as No. 12,384 in the District Court.
On April 17, 1956, Mrs. Wiggert filed a motion in No. 12,384 to strike her name from the above referred-to nomination. She alleged that she did not know that she had been designated as a nominator and had not consented that she be named as such; that she desired that guardian continue to serve as ward's guardian. On the same date she moved that her name be stricken from notice of appeal taken from the last above referred-to order of the county court. On April 4, 1957, the remaining Proctor heirs moved that their names be stricken from the notice of appeal. By formal order, the names of the Proctor heirs were stricken from the notice of appeal and as to them the appeal was dismissed.
It appears that guardian filed a final report and accounting in the county court covering the period that he acted as de facto guardian. This was formally approved and allowed by order under date of April 24, 1956. L.W. Warren, one of ward's nephews, perfected an appeal from said order to the District Court, in which court the cause was numbered 12,398.
It further appears that guardian filed a petition in the District Court seeking approval of his actions as de facto guardian of ward during the period January 7, 1953 to August 31, 1954. The same was numbered 12,429 in said court.
On July 23, 1956, judgment was entered in No. 12,429 in which the court found and held in substance that guardian was indebted to ward in a stated amount for fees received as guardian during the period he was ineligible to serve as such; that on May 3, 1956, guardian reimbursed ward for fees received during said period. No appeal was taken from this order.
On June 29, 1959, judgment was entered in No. 12,384 in which the court found that ward's next of kin were the Warren and Proctor heirs; that as of date of last appointment, guardian was and now is a proper and suitable person to serve as ward's guardian; that only the Warren heirs have objected to guardian's appointment; that bank did not have the nomination of all of ward's next of kin and for said reason was not entitled to be appointed ward's guardian; that guardian was nominated by Mrs. Wiggert; that bank was not suitable "to be appointed guardian of (ward) because it is a legal resident of Muskogee County, Oklahoma, and its principal place of business and nearest office is sixty-five miles from the home of (ward) and because the nature of the institution would make it difficult for the bank to render the close personal service necessary to care for the ward, who is incompetent and bedfast and requires constant supervision"; that it was for the best interest of ward that guardian be appointed as her guardian; that discretion rested in the county court to appoint any suitable person as guardian and that in appointing guardian as ward's guardian, said court did not abuse its discretion.
From order of the trial court denying L.W. Warren's motion for new trial which *1005 was directed to the judgment last above referred to, appellant perfected this appeal.
For reversal, L.W. Warren contends that bank was qualified to serve as guardian; that upon ward's next of kin nominating bank to serve as guardian it, under provision of 58 O.S.Supp. 1953 § 775, was obligatory upon the county court to appoint bank as guardian unless cogent reasons for not doing so appeared; that such reasons do not appear and for said reason the county court abused its discretion in appointing a stranger as guardian.
Guardian contends that the provisions of Sec. 775, supra are applicable only when the nomination is by all of the incompetent's next of kin; that under said section bank was ineligible to be appointed guardian; that in appointing him guardian the county court did not abuse its discretion.
The pertinent provisions of Sec. 775, supra, read as follows:
"* * * provided that no domestic corporation or trust company shall be appointed or qualify as guardian of a minor or person of unsound mind unless such company is at the time a resident of and maintains its usual place of business in the county of the residence of such minor or person of unsound mind; nor shall such company be appointed or act as such guardian unless its principal place of business is located in the county where such proceedings are filed and conducted. Provided further, that such domestic corporation or a natural person not a resident of the State of Oklahoma may be appointed as such guardian upon the written request of the father or mother or next of kin of such minor or incompetent."
To our way of thinking, the Legislature intended that a domestic corporation or trust company whose residence and usual place of business is without the county of the residence of the minor or ward may nevertheless be appointed guardian "upon the written request of the father or mother or next of kin of (the) minor or incompetent."
The remaining question posed by the parties concerning the construction which should be placed on Sec. 775 is whether under the facts of this case the statute only applied if all of the next of kin joined in the nomination of bank as guardian.
The word "may" is so used in the last sentence of Sec. 775 as to make clear that a nomination by the "father or mother or next of kin" is not conclusive nor binding and that irrespective of a nomination, discretion rests in the county court to appoint as guardian a person other than the nominee. In view of said fact and the further fact that the next of kin of an incompetent may in some instances be distant relatives of different classes who are scattered "far and wide" and therefore difficult to contact, the Legislature, in our opinion, intended that the inhibition placed upon county courts in appointing as guardian a domestic corporation or trust company which does not maintain its usual place of business in the county of the residence of the incompetent be removed where one or more of the next of kin nominate said corporation or trust company. The effect that should be given a nomination by next of kin will depend upon the number nominating, the relationship of the nominators to the incompetent and interest in his welfare and other factors.
In support of his contention that bank, as the nominee of the majority of ward's next of kin should have been appointed ward's guardian, L.W. Warren refers to the annotated notes beginning at page 880, 20 A.L.R.2d. L.W. Warren quotes a note by the annotator to the effect that "Consanguinity is considered a recommendation in the selection of a guardian for an incompetent, and will not be disregarded except upon strong grounds, the presumption being that the next of kin of the incompetent will be more likely to treat the latter with patience and affection than will a stranger; so, the usual practice is to appoint as guardian of the incompetent one of the next of kin or other close blood relatives, or their nominee, or at least to consider them seriously in making the appointment." We note that the annotator also says that *1006 "the court is not necessarily bound to appoint next of kin or close relatives or the nominees of such blood relatives, for the court, keeping in mind the principle of law that the best interests of the incompetent are paramount, may, in the exercise of the discretion confided in it with respect to the appointment of guardians, appoint a stranger where to do so would be for the best interests of the incompetent in view of such factors as the adverse interests of the relatives and the incompetent, lack of business ability of the relative, and various other matters further to be noted."
This Court is committed to the rule that in awarding custody and appointing guardians of children, the child's welfare is paramount to claim of the parents. In re Guardianship of Hight et al., 194 Okl. 214, 148 P.2d 475; McVey v. Chester, Okl., 288 P.2d 740, and 30 O.S. 1951 § 11. We are of the opinion that the referred-to rule is applicable in proceeding involving the appointment of a guardian of the person and estate of an incompetent. In Ned et al. v. Robinson, 181 Okl. 507, 74 P.2d 1156, 1160, it was stated that it is not mandatory upon a county court to appoint as guardian the next of kin of an incompetent.
In the first paragraph of the syllabus to Brigman v. Cheney, 27 Okl. 510, 112 P. 993, this is said:
"In the appointment of guardians, the county courts are vested with a sound legal discretion; and their judgments in such cases will not be overruled, unless it is apparent that there has been an abuse of such discretion."
See also Hadwiger v. Melkus et al., Okl., 338 P.2d 1098, to effect that an appeal involving the appointment of an executor is equitable in nature and the burden is upon the party appealing to establish that the findings and judgment of the trial court are clearly against the weight of the evidence.
A careful examination of the record in the instant case convinces us that the findings of the trial court to the effect that guardian was a fit and suitable person to serve as ward's guardian and that it was to the best interest of ward that he so serve are not clearly against the weight of the evidence. We find no abuse in the discretion that rested in the trial court.
Affirmed.
BLACKBIRD, V.C.J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.
WILLIAMS, C.J., and DAVISON, J., concur in result.